**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

PHYLLIS A. COOK,                                        Case No. 1:15-cv-592

               Plaintiff,                              Dlott, J.
                                                       Bowman, M.J.

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.


**REPORT AND RECOMMENDATION**

Plaintiff Phyllis A. Cook filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED for further development of the record, because it is not supported by substantial evidence in the record as a whole.

**I.  Summary of Administrative Record**

Plaintiff filed applications for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on December 11, 2011, alleging a disability onset date of May 11, 2011, due to physical complaints including leg, right shoulder, and back pain. (Tr. 15). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 80-150). In May 2014, Administrative Law Judge ("ALJ") Deborah Smith held a hearing, at which Plaintiff appeared with counsel. Plaintiff, her attorney, and a vocational expert

all testified.  ALJ Smith issued a decision on June 4, 2014, concluding that Plaintiff was not disabled.  (Tr. 13-25).  The Appeals Council denied review; therefore, the ALJ's decision remains as the final decision of the Commissioner.  Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 46 years old at the time her alleged disability began, and was 49, still a "younger individual," at the time of ALJ's decision.  She has a tenth grade education and has past relevant work as a cashier, packer, and fast food worker.  (Tr. 24).  She is insured for purposes of DIB only through March 31, 2013.

The ALJ determined that Plaintiff has the following "severe" impairments: "residual effects of a right shoulder injury, degenerative spinal processes causing chronic back pain, obesity, depression, and polysubstance abuse."  (Tr. 15).  The ALJ noted two additional conditions, hypertension and chest pain, were not severe.  (Tr. 17). The ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability.  (*Id*).  Rather, the ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform a range of light work, except:

> She can only stand and/or walk for a total of four hours in an eight hour work day, 30 minutes at a time. The claimant can frequently push and pull, frequently reach laterally, frequently handle, and occasionally reach over head with the right upper extremity. Her ability to reach in front with that extremity is not limited. The claimant cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps and stairs or stoop. She can frequently kneel, crouch, and crawl. The claimant is limited to performing simple one and two step tasks and can only interact occasionally and superficially with coworkers and supervisors. She is only able to receive instructions and ask questions appropriately in smaller or more solitary environments, is limited to nonpublic work settings, and can

cope with the ordinary and routine changes in work settings where production quotas are commensurate with routine work.

(Tr. 19). The vocational expert testified in response to a hypothetical that although someone with the above RFC could not perform most of Plaintiff's prior unskilled jobs, she could still perform light level jobs such as hand bander, weigher, and line attendant as well as sedentary level jobs such as table worker and sorter. (Tr. 68-69). The ALJ found that she could not perform *any* of her past relevant work. (Tr. 24). Despite being unable to perform prior work, the ALJ determined, based on the VE's testimony, that Plaintiff still could perform representative light and sedentary level jobs such as hand bander, weigher, line attendant, table worker, and sorter. (*Id.*). Therefore, the ALJ concluded that Plaintiff is not under a disability. (Tr. 25).

In this appeal, Plaintiff challenges only the ALJ's determination that she is not disabled by her physical limitations; Plaintiff presents no challenge to the assessment of her mental limitations. In her Statement of Errors, Plaintiff specifically argues that the ALJ erred by: (1) committing reversible error by improperly placing more weight on the opinion of the non-examining State agency than the treating sources; and (2) abusing her discretion in her assessment of the claimant's credibility.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in

"substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.   If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

4

still perform her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  Evaluation of Medical Opinion Evidence**

Social security regulations generally provide for an order of hierarchy in the evaluation of medical opinion evidence, with the opinions of treating physicians to be given the most weight, and the opinions of examining consultants to be given greater weight than the opinions of non-examining consultants.  Plaintiff first complains that the ALJ failed to give the appropriate weight to the opinions of her two treating physicians, Dr. Marsha Smith, and Dr. Nancy Elder, and that the ALJ compounded that error by giving greater weight to the opinions of two agency consultants who neither examined Plaintiff nor had access to her complete medical records.

The specific regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).  Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."  *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

If an ALJ rejects the opinion of a treating physician, he or she is required to provide "good reasons." 20 C.F.R. § 404.1527(c)(2).

> These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004).

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)

The referenced general hierarchy of opinion evidence is not without exceptions. In accord with the regulatory language, controlling weight need not be given to a treating source's medical opinion that is not "well supported by medically acceptable

clinical and laboratory diagnostic techniques" or one that is "inconsistent with the other substantial evidence in the record."  And the no weight at all need be given to dispositive legal (as opposed to medical) opinions.  For example, a treating physician's conclusion that an individual is disabled would not be given controlling weight, since that issue is "reserved to the Commissioner." 20 C.F.R. §404.1527(d).  Though frequently litigated, both regulations and case law make clear that an ALJ may give the greatest weight to the opinions of even a non-examining consultant in appropriate circumstances.  *See* SSR 96-6p; *accord Miller v. Com'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016).

### a.  Plaintiff's Two Treating Physician Opinions

Most of Plaintiff's treatment records originated from physicians at the McMicken Center for the Homeless, where she was seen by Dr. Smith from January 2011 through September 2012 (Tr. 429-456, 482-483), and after Dr. Smith left, at least briefly in 2013 by Dr. Elder.  (Tr. 484-496; *see also* Tr. 47).  Both treating physicians offered opinions concerning Plaintiff's limitations through RFC forms, but the ALJ declined to give any significant weight to either of their opinions and rejected all opinions that differed from those of the two non-examining consultants. (Tr. 23)

Dr. Smith opined on September 24, 2012 that Plaintiff had such extreme functional limitations as to be "unemployable."  Dr. Smith provided her opinions through a "Basic Medical" form completed on Plaintiff's behalf for the Ohio Department of Job & Family Services.  On that form, Dr. Smith opined that Plaintiff would be limited to standing/walking only 1 ½ hours per workday, and only one half hour without interruption.  She stated that Plaintiff could sit for no more than 3 hours in a day, or 1 ½

hours uninterrupted.  She opined that Plaintiff could lift and/or carry no more than 5 pounds, and that pushing/pulling, bending, and reaching were all "extremely limited," while repetitive foot movements were "markedly limited."  (Tr. 482).  As grounds to support those extreme limitations, Dr. Smith noted a decreased range of motion in Plaintiff's spine, Plaintiff's inability to lift her right arm above her head, a decrease in her grip and strength of right upper extremity, and a positive "SLR" [straight leg test] for her lower extremities.  Dr. Smith additionally noted pain on range of motion of both elbows and knees.  (*Id.*).

On April 8, 2014, a second treating physician, Dr. Elder, offered RFC opinions that were significantly less restrictive than the opinions of Dr. Smith.  Dr. Elder completed an RFC questionnaire in which she opined that Plaintiff could occasionally lift up to 20 pounds, could frequently lift less than 10 pounds, could only sit for 60 minutes at a time, could stand/walk for only thirty minutes at one time, with sitting limited to 6 hours in a day, and could stand/walk 2 hours total in a day.  Dr. Elder further opined that Plaintiff can only occasionally twist, stoop, or climb stairs, and can never crouch or squat.  (Tr. 623).  Dr. Elder believed that a further consultative evaluation was needed because the severity of her patient's symptoms <u>were not consistent</u> with her patient's medically determinable impairments.[1]  (Tr. 623, emphasis added).

### b.  Two Agency Consulting Opinions

Two years prior to Dr. Elder's assessment, on April 3, 2012, Dr. Leanne Bertani,

---

[1]The preceding question asks if the physician "found your patient to be sincere and forthright with his/her complaints with no signs of exaggeration or malingering?"  (Tr. 623).  Although the box for "yes" is checked, it is unclear whether Dr. Elder misread that question.  In addition to reporting in the next response that her patient's symptoms were <u>inconsistent</u> with physical findings, she underlined the words "<u>exaggeration</u>" and "<u>malingering</u>" before checking "yes."  (*Id.*)

a non-examining state agency consultant, reviewed a limited set of Plaintiff's medical records in the context of the initial denial of Plaintiff's applications for benefits. (Tr. 87). Pertinent to Plaintiff's claims of physical disability relating to back and shoulder pain, Dr. Bertani had access to the following records: an August 2, 2011 University Hospital ER record, a September 2011 McMicken ER record, an October 2011 MRI of Plaintiff's right shoulder and related physical therapy records from Drake Rehabilitation Center, a November 2011 McMicken ER record, a January 10, 2012 EMG test result, and a January 31, 2012 MRI. (Tr. 82). Based upon her review of those records, including the absence of any restrictions by any medical source, Dr. Bertani assessed Plaintiff's pain complaints as not credible. (Tr. 83). Instead, Dr. Bertani opined that Plaintiff could perform light work, with standing/walking limited to 4 hours, and sitting up to 6 hours. Dr. Bertani opined that Plaintiff has additional postural limitations in that she can only occasionally stoop, or climb ramps, stairs, ladders, ropes and scaffolds, that she can frequently kneel, crouch and crawl, and that she has manipulative limitations in her ability to reach in front and/or laterally with her right arm, or to reach overhead with her right arm or use that arm for gross manipulation. (Tr. 84-85).

After Plaintiff's applications were denied initially, she requested reconsideration, asserting that her pain had worsened in February 2012. (Tr. 101). The same evidence that had been reviewed by Dr. Bertani was reconsidered by a second non-examining agency consultant, Dr. Gerald Klyop. Additionally, Dr. Klyop reviewed the report of an examining psychological consultant (Dr. Sexton), additional medical evidence received from an unknown source in September 2012, evidence from the Christ Hospital received in August 2012, updated evidence from the McMicken Center received in July

2012, and evidence from Plaintiff received in July 2012.  (Tr. 101-102).  Among the additional documents reviewed were clinical and imaging records that provided support for Plaintiff's complaints of pain in her legs and chronic back pain with some lumbar radiculopathy.  Dr. Klyop relied on those records in assessing Plaintiff as fully credible. (Tr. 108).  On September 18, 2012, just before Dr. Smith rendered her opinions, Dr. Klyop offered RFC opinions that were nearly identical to those previously offered by Dr. Bertani.  The only differences were that Dr. Klyop opined that Plaintiff could "never" climb ladders, ropes or scaffolds, (Tr. 110), and that Plaintiff's gross manipulations skills were not limited on the right.  (Tr. 111).

### c.  Errors Asserted

The ALJ largely rejected the opinions of both treating physicians, while giving the earlier opinions of the non-examining consultants "great weight."  Thus, the RFC opinions of both Dr. Bertani and Dr. Klyop formed "the primary basis" for the ALJ's RFC determination.  (Tr. 23).  The ALJ explained that she was giving the greatest weight to their assessments because they were "reasonable and consistent with the overall medical record, including the credited portion of the assessment provided by Dr. Elder." (Tr. 23).

Plaintiff argues that the ALJ's reasons for rejecting the opinions of her two treating physicians were not "good reasons" because they were factually erroneous, and did not comply with the relevant legal standard.  Plaintiff further asserts reversible error due to the ALJ's failure to apply "the same level of scrutiny to the opinions of the consultative doctors on which he relied, let alone the greater scrutiny of such sources called for by 20 C.F.R. § 404.1527."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365,

10

379 (6th Cir. 2013).  The undersigned agrees that remand is required because: (1) the ALJ's analysis of the treating physician opinions reflects both factual and legal errors; and (2) the weight given to the opinions of the non-examining consultants was not adequately explained.

First, the undersigned reviews the ALJ's reasons provided for failing to give controlling weight to the opinions of the treating physicians.  The ALJ explained she was giving Dr. Smith's 2012 opinions "little weight" on grounds that she "did not cite to a significant number of medical findings to support the limitations listed," and that "the form that she completed is used to evaluate individuals for purposes of whether they qualify for welfare benefits, which is a different standard than the one used to determine disability for purposes of receiving Social Security disability benefits."  (Tr. 21).

In addition, the ALJ discounted Dr. Elder's opinions on grounds that

a treatment note indicat[es] that the claimant came to Dr. Elder's office in order to get paperwork filled out for her SSI claim and to get a referral to physical therapy… From this, it is clear that in making her findings Dr. Elder was quite reliant upon the claimant's subjective report of her physical limitations.  She did not cite specific objective medical findings to support her indication of the claimant's function-by-function restrictions. Accordingly, the assessment of Dr. Elder is not given great weight. Moreover, her general indications…are accommodated by the finding that the claimant is only able to stand or walk a total of four hours…and has postural limitations and limitations of the use of the right upper extremity as described above.

(Tr. 22).

When a treating source opinion is not given controlling weight, the ALJ must determine the weight the opinion should be given by considering six factors listed in 20 C. F.R. § 404.1527(c)(2) including the length of the treatment relationship, nature and extent of the relationship, supportability, consistency, specialization, and other factors

11

including understanding of the agency regulations. Exhaustive articulation of each factor is not required. *See Francis v. Com'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

Here, however, the ALJ's rejection of the treating source opinions is too brief to allow for meaningful review, and contains clear error. The ALJ listed two reasons for giving Dr. Smith's opinions "little weight": 1) a lack of a significant number of medical findings to support the limitations listed; and 2) the use of a form from a welfare agency, as opposed to the form more customarily used for social security determinations. The latter reason - that the welfare agency uses "a different standard than the one used to determine disability for purposes of receiving Social Security disability benefits" – is inaccurate. At the time Plaintiff applied for Medicaid using the referenced form, Ohio applied the same social security standards to determine disability.

The Defendant suggests that the error was harmless insofar as it merely reflects an "inartful[]" explanation of an accurate statement of law; to wit, that an ALJ is not bound by another agency's decision about whether an individual qualifies for disability benefits. *See* 20 C..F.R. § 404.1504. But Plaintiff persuasively points out that, even if the Defendant's interpretation of the ALJ's statement is correct, it is irrelevant, because the purpose of the form is immaterial to Dr. Smith's opinions on Plaintiff's specific functional limitations (i.e., that she could stand no more than 1.5 hours in a day, and sit no more than 3).

Because the ALJ's second reason for rejecting Dr. Smith's RFC opinions[2] is no reason at all, her rejection of Dr. Smith's opinions must stand on the rather oblique statement that the opinions were not supported by "a significant number of medical findings." As the Defendant points out, a one sentence rejection of a treating physician's opinion may suffice in some cases. *See Allen v. Com'r of Soc. Sec.,* 561 F.3d 646 (6th Cir. 2009). However, in *Allen*, the ALJ's rejection of the treating source opinion was specific enough to detail "several of the factors that an ALJ must consider…including: the length of the treatment relationship and the frequency of examination, …the nature and extent of the treatment relationship, …and the supportability of the opinion." *Id.* at 651.

The Defendant suggests that this Court may affirm because Dr. Smith's opinions were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." However, Dr. Smith did list some clinical findings such as decreased range of motion and a positive straight leg raising test, and the McMicken Center records generally support severe impairments of the spine and right shoulder. Plaintiff also notes MRIs (Tr. 414, 424) and EMG test results dated January 12, 2012 that are consistent with Dr. Smith's opinions.

In *Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013), the Sixth Circuit reversed in part because the ALJ gave greater scrutiny to the opinions of treating physicians than to the opinions of non-examining consultants, and in part because the

_____

[2]The ALJ was not required to consider Dr. Smith's opinion that Plaintiff was "unemployable" since that legal issue is reserved to the Commissioner.

13

ALJ's stated basis for rejecting the treating physician opinions was too ambiguous to allow for meaningful judicial review.

> [T]he conclusion that [the treating physician's] opinions "are not well-supported by any objective findings" is ambiguous. One cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques, *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions.

(*Id.* at 377).

As in *Gayheart*, the ALJ's analysis is simply too cursory and ambiguous to constitute "good reasons" for which the undersigned can find substantial evidence in the record as a whole.  It is possible that the ALJ believed the records cited and the clinical findings referenced by Dr. Smith did not support the degree of extreme limitation that Dr. Smith noted on her "Basic Medical" form.  Certainly it is notable that Dr. Elder, who took over as Plaintiff's primary care physician after the departure of Dr. Smith, offered less restrictive functional opinions and appears to have questioned whether Plaintiff was malingering or exaggerating her symptoms.  Nevertheless, the Sixth Circuit has repeatedly counseled that the procedural "good reasons" error is a substantial one that usually requires remand.  On the record presented, and considering other errors noted below, the undersigned will not engage in speculation about what the ALJ may have meant.  In short, I do not agree that the procedural articulation error is harmless.

Although the ALJ expressly stated that she was giving Dr. Smith's opinions "little weight," the ALJ was somewhat less precise in defining the weight she was giving to Dr. Elder's opinions, stating only that the opinions were "not given great weight" but were at least partially accommodated. (*See* Tr. 22-23).  The ALJ's determination that Dr. Elder's

14

RFC opinions were not entitled to controlling weight because they were overly reliant on Plaintiff's subjective complaints is more clearly articulated than her analysis of Dr. Smith's opinions.  A single clinical record provides only modest support for Dr. Elder's opinions.  (*See, e.g.*, Tr. 489, noting diffuse tenderness, but also noting normal gait and other "normal" findings).  Thus, overall, the undersigned finds no reversible error in the ALJ's determination that Dr. Elder's unsupported and unexplained opinions were not entitled to controlling weight.  Plaintiff's contention that inner city clinic physicians like Drs. Smith and Elder "simply do not have the time to prepare extensive narrative reports" (Doc. 14 at 5), may be true, but that does not excuse the total absence of explanation for RFC opinions.

Plaintiff also argues that the ALJ should have given Dr. Elder's opinions more weight because when she rendered her opinions in 2014, she had access to more clinical and objective data than any other treating or consulting physician.[3]  Although the undersigned finds no reversible error in the ALJ's failure to give controlling weight to Dr. Elder's opinions, the more complete records to which Dr. Elder had access do provide a marked contrast with the far more limited records reviewed by the non-examining consultants.  And as the Plaintiff is quick to point out, the ALJ specifically stated that she was giving greater weight to the consultants' opinions than to the opinions of Drs. Smith and Elder because the "reviewing medical professionals on behalf of the Administration …had the opportunity to review the <u>entire</u> medical record."  (Tr. 23, emphasis added).

---

[3]Somewhat ironically in light of the ALJ's stated criticism of her over-reliance on Plaintiff's subjective complaints, Dr. Elder appears to have questioned the veracity of some of those complaints, suggesting that a consultative examination was required because Plaintiff's complaints were inconsistent with her patient's medically determinable impairments.

The ALJ's incorrect statement of the record provides additional grounds for remand.  On initial review, Dr. Bertani had the opportunity to review only a few of Plaintiff's records.  Although Dr. Klyops had access to a greater number of records, neither consultant had access to most of Plaintiff's more recent records, including, importantly, the opinions of her treating physicians.  The ALJ's failure to acknowledge that fact and failure to explain her consideration of the same constitutes reversible error. *See Miller*, 811 F.3d at 834 (reversing and remanding where ALJ failed to give any indication that non-examining source did not review the complete case record before giving greater weight to consulting opinion); *accord Blakley*, 581 F.3d at 409 (requiring some indication that ALJ at least considered the fact that consultants did not review complete records prior to giving greater weight to their opinions).

The Defendant argues that the ALJ's misstatement was harmless error on grounds that the ALJ's statement "served as more of a summary rather than an explanation of her decision making process." (Doc. 11 at 16).  However, other apparent error in the analysis of the treating physicians' opinions leaves too much ambiguity to dismiss the error as harmless.  *See Miller*, 811 F.3d at 835 (remanding based on misperceptions of the record and failure to follow regulations despite otherwise "through and thoughtful" decision).

### 2. Assessment of Plaintiff's Credibility

Plaintiff's second claim is that the ALJ erred by failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. §404.1529 in evaluating her credibility.  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

Plaintiff claims that she is physically disabled based partly upon the level of her chronic pain. However, the ALJ found her not to be fully credible, for multiple reasons:

> The claimant's testimony did not provide a credible basis for finding her to have greater limitations than are set forth above. She has made inconsistent statements regarding her history of drug abuse and whether such abuse continues. In light of comments made in December 2013 that she "snorts" cocaine on a regular basis two or three times per week, the last such use being only a week earlier…, it appears that such abuse is probably continuing at the present time. Despite this, the claimant stated at the hearing that she has been drug-free and completely clean for four years except for one relapse involving use of crack cocaine in December 2013…. This statement is shown to be inaccurate both by her comments to a treating physician in December 2013 and by the fact that she had a positive toxicity screening for cocaine at that time.…The claimant has also made differing statements as to the amount of cigarettes that she smokes.

> The claimant admitted that she is not currently in mental health treatment, and although she stated that she has seen a psychiatrist it is not clear from the record when she did this or who she saw. Other statements made in the treatment record suggest that when the claimant has gone for medical care she has been focused on seeking disability benefits…and has even been willing to postpone recommended surgery until after she "gets her disability decision.… The claimant's concern about the effect that her medical record may have upon her disability claim is further evidenced by her recent statement to her physician that she does not think her chest pain in December 2013 was related to her cocaine use….She has otherwise shown a tendency towards noncompliance with recommended medical care, failing to follow up with right shoulder treatment for a full year…and going off her hypertension medication for at least a while….

17

> The claimant does not have a long and impressive work history; it cannot be assumed that she would be working if [she] were able…. [H]er testimony concerning her daily activities described a somewhat more limited lifestyle than she conveyed to the consultatively examining psychologist in August 2012. She told the examining psychologist that she enjoys making bracelets and likes to read, listen to music, and watch television. The claimant did not mention taking naps, nor did she tell the examining psychologist about doing any household chores. Each of these inconsistent statements further detracts from her overall credibility….

(Tr. 20).

Plaintiff testified that she lives independently, prepares simple meals, goes out to restaurants to eat once or twice a month, visits with friends twice a month, and is independent in all activities of daily living. She reported that she enjoys making bracelets, reading, watching TV or listening to music, and visiting on the phone with her best friend or grandkids. (Tr. 16, 459). Although she testified that her adult daughter and granddaughter assist her with household chores like laundry, cleaning and grocery shopping, Plaintiff testified that she had always had that type of assistance, long before her alleged disability onset date. (Tr. 64). At the end of physical therapy in October 2011, Plaintiff apparently reported that the pain in her shoulder had decreased to a "2" on a scale of 1 to 10, and she had no evidence of limitations in her use of her arm at discharge. (Tr. 21). However, Plaintiff later claimed to have had no improvement in her right shoulder impingement. (*Id.*).

It is clear that the ALJ was particularly disturbed by Plaintiff's denials and inconsistent statements concerning the "nature and severity of her drug use." (Tr. 16). In addition to the referenced evidence of regular weekly powdered cocaine use, the ALJ noted evidence that Plaintiff abuses crack cocaine and marijuana, and drinks alcohol. (Tr. 16-17).

18

The undersigned finds no reversible error in the ALJ's credibility assessment. Contrary to Plaintiff's argument, the undersigned detects no inappropriate tone or sarcasm in the ALJ's assessment.  Plaintiff argues that her repeated statements to her physicians concerning her desire to pursue disability benefits can be read in a more charitable or benign manner that would not impugn her credibility.  Be that as it may, the undersigned finds no error in the ALJ's alternate and eminently reasonable assessment of Plaintiff's statements as reflecting negatively on her credibility.

Plaintiff also argues that the ALJ's negative comment concerning Plaintiff's work history is inappropriate, because Plaintiff "acquired quarters of coverage for disability insurance benefits with Social Security [in] all but 3 quarters from 1994 through 2008." Again, however, and taken in the context of the record as a whole, the undersigned finds no reversible error.  Instead, I conclude that the ALJ's credibility assessment was well within the zone of choice and supported by substantial evidence in the record as a whole.

Still, in any case in which remand is directed for other errors, it is the custom and practice of the undersigned to direct a new credibility assessment.  That practice is followed herein.  Error in the assessment of medical opinion evidence may ultimately impact the assessment of a plaintiff's credibility.  For example, if the opinion of a treating physician that was previously rejected on inadequate grounds is ultimately adopted, a plaintiff's pain complaints may suddenly appear more credible.

The strong support for the ALJ's negative credibility assessment in this case underscores why the decision to remand is a relatively close one.  It is entirely possible that the errors that require remand for further development will result in the same

adverse disability decision, despite the errors being not so inconsequential that they may be dismissed as harmless.

One final note is worth mentioning, to the extent that the issue may present itself if the Commissioner determines on remand that Plaintiff would be disabled due to her multiple impairments *including* polysubstance abuse.  While the undersigned has found no error in the  discussion of Plaintiff's substance abuse insofar as it was limited to the assessment of Plaintiff's credibility, the Social Security Act provides for a distinct analysis of polysubstance abuse in order to avoid payment of benefits if such abuse "would…be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(A)(3)(J). Under relevant regulations, an ALJ must first determine whether a claimant suffers from a disability before proceeding - if necessary - to a determination of whether the substance abuse is a "contributing factor to the determination of a disability."  20 C.F.R. §404.1535(b).  On more than one occasion in this Court, remand has been required if an ALJ improperly conflates the analysis. *See Morrison v. Com'r of Soc. Sec.*, 2014 WL 7409752 (S.D. Ohio Dec. 31, 2014)(Dlott, J., adopting R&R and remanding in part because the ALJ failed to even mention the substance abuse regulations).

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four, for further development of the record consistent with this report and recommendation, that judgment be entered, and that this case be **CLOSED.**

_/s Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PHYLLIS A. COOK,                                    Case No. 1:15-cv-592

           Plaintiff,                          Dlott, J.
                                                    Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

22